```
___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
              COUNSEL/PARTIES OF RECORD

      JAN 1 4 2011

    CLERK US DISTRICT COURT
     DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHARON BAHRY, et al., | 3:09-CV-00690-RCJ-(VPC) |
| Plaintiffs, | |
| v. | **ORDER** |
| MONTAGE MARKETING, LLC, a Delaware limited liability company, et al., | |
| Defendants. | |

This is an action by purchasers of real estate against the sellers. Presently before the Court is Defendants'[1] Motion to Dismiss and Compel Arbitration (#13). Plaintiffs[2] opposed the motion (#15) and Defendants replied (#16). The Court held oral argument on September 27, 2010. The Court now issues the following order. IT IS HEREBY ORDERED that Defendants' Motion to Dismiss and Compel Arbitration (#13) is DENIED.

## I. BACKGROUND

---

[1] Defendants are Montage Marketing, LLC, Montage Marketing Corp., 255 North Sierra Street, LLC, and Fernando Leal.

[2] Plaintiffs are Sharon Bahry, Jeffrey Clark, Harold Cohn, Diane Cohn, Jeffrey Houk, Caroline Houk, David Lee, Marlies Lee, Pensco Trust Co., Michael Postma, Charles Randall, Zeina Randall, Stephen Raps, Larry Schuelke, Jaturong Bob Swangnete, Toni Nang Swangnete, Kirk Vandermark, Amy Vandermark, Christine Wicks, Jim Williamson, and Lisa Young.

1

This is a real estate sales dispute. Plaintiffs agreed to purchase condominiums from Defendants. They had deposited down payments with Defendants. Plaintiffs now wish to rescind the agreements to purchase and to have their down payments returned, alleging that Defendants committed fraud and misrepresentation, breached the contract, breached their fiduciary duties, violated federal and Nevada statutes, and that the consideration in support of the contracts was illusory.

All Plaintiffs signed essentially the same purchase agreements (the "Purchase Agreement"). (*See* Defs.'s Mot. to Dismiss (#13) 4:17; Pls.' Opp'n (#15) 4:20–21). The core of the Purchase Agreement is 34 pages. On page one, the Purchase Agreement states:

> THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES AND SHOULD BE READ THOROUGHLY PRIOR TO SIGNING. IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR OBLIGATIONS UNDER THIS DOCUMENT YOU MAY WISH TO CONSULT AN ATTORNEY.

(The Purchase Agreement at 2, attached as Ex. 1 to 1st Am. Complaint (#8)). Also on the first page, the Purchase Agreement provides a right to cancel:

> RIGHT TO CANCEL: YOU HAVE THE OPTION TO CANCEL YOUR CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE 7TH DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT.

(*Id.*).

Section 11 of the agreement reads:

> Arbitration of Disputes. All claims and disputes between Seller and Buyer arising out of or relating in any way to the Property or the Project shall be resolved in accordance with the Agreement to Arbitrate attached hereto as **Exhibit "F"**.

(The Purchase Agreement § 11, at 12).

In an addendum to the agreements, Plaintiffs initialed acknowledgment of receipt of

1   the Agreement to Arbitrate.[3]

2         The Agreement to Arbitrate contains the following language:

3         PRE-CLOSING DISPUTES.   IT IS AGREED THAT ANY CLAIM,
      CONTROVERSY, CAUSE OF ACTION, CLAIM FOR RELIEF, LIABILITY OR
4         DISPUTE BETWEEN BUYER AND SELLER ARISING OUT OF THE
      PURCHASE AGREEMENT OR RELATING IN ANY WAY TO THE PROPERTY
5         OR THE PROJECT WHERE THE PROPERTY IS LOCATED WHICH ARISES
      PRIOR TO THE CLOSING HEREUNDER ("**PRE-CLOSING CLAIMS**") SHALL
6         BE RESOLVED BY BINDING ARBITRATION PURSUANT TO THIS SECTION
      1.

7

8   (Agreement to Arbitrate § 1, at 1, attached as Ex. B to Edge Aff., attached as Ex. 1 to

9   Defs.' Mot. to Dismiss (#13)).  Above the signature block, the Agreement to Arbitrate

10  states:

11        NOTICE.  BY SIGNING BELOW, BUYER IS AGREEING TO HAVE ANY
      DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS
12        "AGREEMENT TO ARBITRATE" DECIDED BY ARBITRATION AS PROVIDED
      BY NEVADA LAW AND THIS ARBITRATION AGREEMENT; AND BUYER IS
13        GIVING UP ANY RIGHTS BUYER MIGHT POSSESS TO HAVE THE DISPUTE
      LITIGATED IN A COURT, INCLUDING A JURY TRIAL. . . .  IF BUYER
14        REFUSES TO SUBMIT TO ARBITRATION AFTER ENTERING INTO THIS
      ARBITRATION AGREEMENT. BUYER MAY BE COMPELLED TO ARBITRATE
15        UNDER APPLICABLE LAW.

16
(*Id.* at 4).  Each of the Plaintiffs signed the Agreement to Arbitrate.[4]  (Edge Aff. ¶¶ 10–11,
17
Ex. B, Ex. C).
18
      The Agreement to Arbitrate allows for the prevailing party to recover attorney's fees:
19
20        THE PREVAILING PARTY OR PARTIES IN SUCH ARBITRATION SHALL BE
      ENTITLED TO RECOVER REASONABLE ATTORNEYS' FEES FROM THE
      LOSING PARTY OR PARTIES IN SUCH AMOUNTS AS THE ARBITRATOR
21        SHALL DETERMINE.

22
(Agreement to Arbitrate § 1(H), at 2).  It also contains a confidentiality provision:
23
24        EXCEPT AS MAY BE REQUIRED BY LAW OR FOR CONFIRMATION OF THE
      AWARD, NEITHER OF THE PARTIES NOR THE ARBITRATOR MAY

25  _____

26      [3] Defendants provide an affidavit to show that every Plaintiff initialed acknowledgment
of receipt of the Agreement to Arbitrate.  (Edge Aff. ¶¶ 8–9 and Ex. A, attached as Ex. 1 to
27  Defs.' Mot. to Dismiss (#13)).  Plaintiffs do not dispute this.

28      [4] Defendants rely on an affidavit to show that Plaintiffs signed the Agreement to
Arbitrate.  (Edge Aff. ¶¶ 10–11, Ex. B, Ex. C).  Plaintiffs do not dispute this.

1    DISCLOSE THE EXISTENCE, CONTENT OR RESULTS OF THE
     ARBITRATION HEARING WITHOUT PRIOR WRITTEN CONSENT OF BOTH
2    PARTIES AND SUCH CONTENT AND RESULTS ARE STRICTLY
     CONFIDENTIAL.
3

4    (*Id.* at § 1(G), at 2).

5

6                                    **II. LEGAL STANDARD**

7        If an enforceable arbitration clause requires claims to be arbitrated, the plaintiff can

8    prove no set of facts that support his claim that the federal courts are the proper forum for

9    resolution of his claims.  *Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d

10   1288, 1299 (D. Nev 2003).  In such a case, dismissal is appropriate under Rule 12(b)(6) of

11   the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be

12   granted.  *See id.* at 1294 n.12.  The Court may stay the proceedings in lieu of dismissal

13   while arbitration proceeds.  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th

14   Cir. 2006).  The Court may sever an unenforceable arbitration provision.  *Id.* at 1276.

15

16                                    **III. ANALYSIS**

17       The parties clearly agreed to arbitrate their disputes.  But, Plaintiffs argue the

18   arbitration provisions are unenforceable because they are unconscionable.  In Nevada, a

19   provision must be both substantively and procedurally unconscionable for courts to decline

20   to enforce it.  The arbitration provisions are one-sided in Defendants' favor and thus

21   substantively unconscionable.  However, there is a factual question as to whether the

22   Purchase Agreements were contracts of adhesion and thus procedurally unconscionable.

23   Because Defendants bear the burden of persuasion, the Court must rule against them and

24   allow this lawsuit to move forward.

25       **A.    Defendants have failed to show that the Agreement to Arbitrate is not**

26               **unconscionable.**

27       Under the Federal Arbitration Act, an arbitration clause in a contract evidencing a

28   transaction involving commerce is valid and enforceable "save upon such grounds as exist

                                         4

at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[U]nconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable." *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). Unconscionability is governed by state law. *Id.* The party moving to enforce the arbitration clause has the burden of persuading the Court that it is valid. *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004). Under Nevada law, for a clause to be unenforceable as unconscionable it must be both procedurally and substantively unconscionable. *Id.*[5]

**1.     Because Defendants bear the burden of establishing that the arbitration clause is valid and the record is unclear as to the clause's conscionability, the Court must treat the Agreement to Arbitrate as procedurally unconscionable.**

"A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *Id.* "An adhesion contract has been defined as a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Wixted v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985) (per curiam).

Plaintiffs argue that the Purchase Agreement was a contract of adhesion—that they had no meaningful opportunity to negotiate its terms. Defendants argue that Plaintiffs have provided no evidence of their inability to negotiate terms of the Purchase Agreements and

---

[5] Defendants also cite three Nevada district court cases in which the courts enforced the Agreement to Arbitrate against other plaintiffs. These cases are non-binding and do not clearly address the issues raised before this Court.

1 | that some of Plaintiffs were sophisticated investors, not consumers purchasing basic goods
2 | and services.[6]

3 |     Defendants argue that the Purchase Agreements were not contracts of adhesion
4 | under *D.R. Horton*. Defendants are wrong when they suggest that *D.R. Horton* holds that
5 | home purchase agreements can never be contracts of adhesion. In *D.R. Horton*, a
6 | Nevada district court held that a contract between home buyers and a property developer
7 | was a contract of adhesion after an evidentiary hearing. 549 P.3d at 1162. On appeal, the
8 | Supreme Court of Nevada held that the district court's finding in this regard was not
9 | supported by substantial evidence. *Id.* at 1163. The Supreme Court of Nevada noted that
10 | the record showed "that it was possible to negotiate for deletion of the arbitration
11 | provision." *Id.*

12 |     In this case, the Court lacks the benefit of an evidentiary hearing with a developed
13 | record on the issue of adhesion. Plaintiffs have argued that the Purchase Agreements
14 | were contracts of adhesion. Defendants argue otherwise and provide an affidavit stating
15 | that "[p]urchasers had the opportunity to negotiate terms of their [Purchase] Agreements,
16 | the most common being price and upgrades. In addition, purchasers had the ability to
17 | negotiate, and not sign the Exhibit 'J,' Owner Occupancy Addendum, especially those who
18 | were purchasing solely as an investment." (Edge Aff. ¶ 12). Four of Plaintiffs did not sign
19 | the Owner Occupancy Addendum. (*Id.* at Ex. A). This evidence is not entirely persuasive.
20 | Defendants have no evidence of Plaintiffs negotiating any term of the Purchase
21 | Agreements. That some Plaintiffs were not required to sign the Owner Occupancy
22 | Addendum only shows that Defendants used form addendums to their form contract to
23 | create different form combinations. Furthermore, this is a motion to dismiss. Plaintiffs
24 | have not had the opportunity to submit evidence or conduct discovery.

25 |     The factual question of whether or not this was a contract of adhesion simply cannot
26 |
27 | ───────────────
28 |

[6] Defendants spend many pages arguing that the terms were conspicuous. Plaintiffs do not argue that the arbitration provisions are unconscionable because they were not readily ascertainable. Therefore, the Court need not address these arguments.

1  be clearly answered at this stage.  Under Nevada law, the burden of proving a valid

2  arbitration clause rests on Defendants.  *See D.R. Horton, Inc.*, 96 P.3d at 1162.  Therefore,

3  the Court must treat the contract as one of adhesion for the purposes of this motion.

4      **2.**    **The Agreement to Arbitrate is substantively unconscionable.**

5      "'[S]ubstantive unconscionability focuses on the one-sidedness of the contract

6  terms.'" *D.R. Horton, Inc.*, 96 P.3d at 1162–63 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149

7  (9th Cir. 2003)).  Plaintiffs argue that the Agreement to Arbitrate was one-sided because it

8  included a clause allowing the prevailing party in arbitration to recover attorney's fees and

9  costs and a clause requiring arbitration proceedings to be confidential.

10      **a.**    **The attorney's fees provision is one-sided in Defendants' favor.**

11      Though bilateral on their face, clauses that increase the costs of arbitration may be

12  one-sided as applied because of the disparities in economic resources between the

13  parties.  *See D.R. Horton, Inc.*, 96 P.3d at 1165 ("Ordinary consumers may not always

14  have the financial means to pursue their legal remedies, and significant arbitration costs

15  greatly increase that danger.  In such a circumstance, the contract would lack the

16  'modicum of bilaterality' . . . .").  For example, an agreement requiring an employer and

17  employee to split arbitration costs and authorizing the arbitrator to, at his discretion, require

18  the employee to pay the employer's share of the costs has been found substantially

19  unconscionable.  *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177–78 (9th Cir.

20  2003) (applying California law).

21      Plaintiffs admit that the attorney's fees provisions are bilateral on their face, but

22  argue that they are meant to intimidate purchasers away from litigation through threatened

23  financial ruin.  Furthermore, Plaintiffs note that the attorney's fees clause is not bilateral in

24  these circumstances because under the Interstate Land Sales Act, plaintiffs may recover

25  attorney's fees without the threat of a successful defendant recovering attorney's fees.

26  *See* 15 U.S.C. § 1709(c).  Thus, at least under the Interstate Land Sales Act, the

27  seemingly bilateral attorney's fees provision solely benefits Defendants.  *See In re Lucas*,

28  312 B.R. 407, 412 (Bankr. D. Nev. 2004) (holding that an arbitration provision is

1     unconscionable when it fails to provide a scheme that allows a successful plaintiff to

2     recover his costs and attorney's fees since the Interstate Land Sales Act provides this

3     protection in the courts); *see also Ontiveros v. DHL (USA), Inc.*, 79 Cal. Rptr. 3d 471,

4     484–85 (Cal. Ct. App. 2008) (noting that an employment contract of adhesion may not

5     require the employee to bear any expenses that he would not bear if bringing the action in

6     court).

7         Defendants argue that the Truth In Lending Act and the Interstate Land Sales Act

8     already allow successful litigants to recover attorney's fees.  Defendants do not support

9     this claim.  Both acts appear to limit recovery of attorney's fees to plaintiffs.  The Truth In

10    Lending Act allows a person to recover attorney's fees and costs from a creditor who

11    violates its provisions in an action for rescission.  15 U.S.C. § 1640(a)(3).  It does not

12    suggest that the creditor may recover attorney's fees if he successfully defends the suit.

13    The Interstate Land Sales Act allows a purchaser or lessee to recover attorney's fees and

14    costs from developers or agents who violate its provisions.  15 U.S.C. § 1709.  It does not

15    suggest that the developer or agent may recover attorney's fees if he successfully defends

16    the suit.  Neither act explicitly awards attorney's fees to the "prevailing party."  *Compare*

17    Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b) ("[T]he court, in its discretion,

18    may allow *the prevailing party* . . . a reasonable attorney's fee as part of the costs . . . .")

19    (emphasis added).

20         Defendants argue, based on *Jones v. General Motors Corp.*, 640 F. Supp. 2d 1124

21    (D. Ariz. 2009), that an arbitration agreement's alteration of remedies under the Truth In

22    Lending Act does not render the arbitration provisions substantively unconscionable.

23    *Jones*, however, does not really apply.  First, it is non-binding and applies Arizona law.

24    Arizona, unlike Nevada, allows a finding of unconscionability to be based on substantive

25    unconscionability alone.  *Id.* at 1129.  Nevada, on the other hand, requires the presence of

26    both procedural and substantive unconscionability and allows the abundance of procedural

27    unconscionability to compensate for the dearth of substantive unconscionability.  *See D.R.*

28    *Horton, Inc.*, 96 P.3d at 1162.  Second, the court in *Jones* addressed the issue of whether

the Truth In Lending Act forecloses recovery of attorney's fees by defendants in arbitration. 640 F. Supp. 2d at 1144–45. The court did not squarely confront the issue of whether the Truth In Lending's base-line of allowing the prevailing plaintiff attorney's fees but not the prevailing defendant renders a facially neutral clause allowing recovery of attorney's fees to the prevailing party one-sided.

Defendants also argue that Plaintiffs have failed to establish any threatened financial ruin. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.—Alabama v. Randolph*, 531 U.S. 79, 92 (2000) (5-3 on this issue). Defendants are correct that Plaintiffs have provided no evidence or argument showing that financial ruin is likely if they pursue arbitration. Indeed, if they prevail, they will recover their attorney's fees. However, the Court need not find that the attorney's fees provision creates a likely threat of financial ruin to Plaintiffs; the Court only need find that the provision is one-sided in Defendants' favor. In the context of the schemes allowing consumers to recover attorney's fees but not lenders or developers, the attorney's fees provision of the Agreement to Arbitrate is one-sided and substantively unconscionable. Defendants receive a potentially substantial benefit while Plaintiffs do not.

**b.    The confidentiality provision is minimally one-sided in Defendants' favor.**

"[E]ven facially mutual confidentiality provisions can effectively lack mutuality and therefore be unconscionable." *Davis v. O'Melveny & Meyers*, 485 F.3d 1066, 1078 (9th Cir. 2007) (applying California law). "Although facially neutral, confidentiality provisions usually favor companies over individuals." *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) (applying California law). This is because large companies are usually repeat players in arbitration. If arbitration is open, then plaintiffs' counsel and arbitration appointing agencies may scrutinize awards and gain knowledge from prior arbitrations and the advantage to companies for being repeat players is mitigated. But, "if the company

9

1   succeeds in imposing a gag order, plaintiffs are unable to mitigate the advantages inherent

2   in being a repeat player." *Id.* at 1152.

3          Plaintiffs argue that, though it is bilateral on its face, the confidentiality clause

4   unilaterally favors Defendants as repeat players to arbitration of their unilaterally crafted

5   contracts.  Defendants assert that any "repeat player" advantage they have is vastly

6   overstated.

7          Merely asserting a "repeat player" advantage without more particularized evidence

8   demonstrating impartiality will not support a finding of unconscionability.  *Nagrampa*, 469

9   F.3d at 1285 (applying California law).  Unlike the situation in *Ting* where the contracts

10  were sent to 60 million customers, 319 F.3d at 1134, only 145 buyers executed the

11  Purchase Agreements, (Hsu Aff. ¶ 2, attached as Ex. 1 to Defs.' Reply (#16)).  The specter

12  of a "repeat player" advantage is not readily apparent in this case.  The buyers are few

13  enough in number to work together and share knowledge.  Defendants will not be given the

14  unfair opportunity to hone their skills and knowledge on a great number of cases that

15  potential plaintiffs will not have access to.  The one-sidedness of the confidentiality

16  provision is minimal.

17  **B.    The Agreement to Arbitrate covers Plaintiffs' claims sounding in tort and**

18  **claims for rescission.**

19         Plaintiffs summarily argue that the Agreement to Arbitrate does not cover their

20  claims for rescission and their tort claims.  Plaintiffs do not provide argument or authority

21  on this point.

22         Though specific challenges to an arbitration clause may be heard by the courts first,

23  challenges to the validity of a contract as a whole must first be heard by an arbitrator.

24  *Nagrampa*, 469 F.3d at 1268 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct.

25  1204, 1209 (2006)).  Thus, even claims of fraud in the inducement and that a contract is

26  void ab initio must first be hear by an arbitrator. *Nagrampa*, 469 F.3d at 1268–69 (citing

27  *Buckeye*, 126 S. Ct. at 1208–09 and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388

28  U.S. 395, 398–400 (1967)).  Therefore, the Agreement to Arbitrate, if enforceable, governs

1  all Plaintiffs' claims.

2      **C.    Certification for Immediate Appeal**

3      The issue of whether the Agreement to Arbitrate is unconscionable is a controlling

4  issue and there is substantial ground for difference of opinion regarding the correct

5  conclusion.  An immediate appeal will materially advance this litigation.  The Court will

6  certify this decision for immediate appeal under 28 U.S.C. § 1292(b).

7      **D.    Plaintiff's request to have their deposits placed with Court**

8      Plaintiffs ask the Court to order their deposits placed with the Court because the

9  status of the deposits is not clearly known.  Plaintiffs fear that the condominium project

10  may fail and their funds may be lost.  Defendants have not addressed this request.

11      Plaintiffs should argue this request as a separate motion for a preliminary

12  mandatory injunction.  Furthermore, Plaintiffs have provided no reason why the Court

13  should elevate them above the status of general creditors.  Therefore, the Court denies

14  Plaintiff's request to order their deposits placed with the Court.

15

16               **IV. CONCLUSION**

17      Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss and Compel

18  Arbitration (#13) is DENIED.

19      IT IS FURTHER ORDERED that this order is certified for immediate interlocutory

20  appeal under 28 U.S.C. § 1292(b).

21      IT IS SO ORDERED.

22      DATED: This 14th of January, 2011.

23

24

25  _____

26  Robert C. Jones
    UNITED STATES DISTRICT JUDGE

27

28

        11